McIlvaine, J.
The questions presented for decision in this case relate to the right of the widow in the estate of the testator. She claims as a creditor under the ante-nuptial agreement, and also as devisee and legatee under the will. The residuary legatees deny her right under both the contract and the will, and contend that she is entitled to take under the contract only. They contend, in the first place, that there was no election, under the statute, by the widow to take under the will.
Before this point need be determined, another of some •difficulty arises, namely, Did this case come within the statute? The provision of the statute (section 43 of the wills act, as amended April 2,1848, S. & C. 1623), is as follows:
“ (43.) Sec. XLIII. If any provision be made for a widow *180 in the will of her husband, it shall be the duty of the probate judge, forthwith after the probate of such will, to-issue a citation to said widow to appear and make her election, whether she will take such provision or be endowed of the lands of her said husband, and said election shall be made within one year from the date of the service of the citation aforesaid; but she shall not be entitled to both, unless it plainly appears by the will to have been the intention that she should have such provision in addition to-her dower.”
And section 44 provides, “ and if the widow shall fail to make such election she shall retain her dower,” etc.
By the terms of the ante-nuptial contract, the right of the widow to dower, in the real estate of the testator, as well as her distributive share in the personal estate, was barred. This proposition is not disputed. Her election under the statute, to be endowed, would, therefore, have-been fruitless; she could not thus have avoided the effect of her valid and subsisting ante-nuptial contract.
It is only as between the right to be endowed and the right under her husband’s will, however, that the statute requires the widow to make an election. There is no election required, under the statute, as between the provisions of a will and the rights of the widow under a settlement or jointure. Nor does it make any difference whether the settlement or jointure be in bar of dower or not. We are not authorized to extend the presumption which this statute creates beyond its terms. The presumption under the statute is, that provisions in a will in favor of the testator’s wife are in lieu of dower and her distributive share, unless an intention to the contrary plainly appears in the will. Whether or not any other interest or claim, which a widow may have in or against the estate of her husband, is satisfied by provisions in her favor in his will, must be determined, not by the rule of the statute, but upon principles of reason and right which exist entirely independent of the statute.
But, inasmuch as the ante-nuptial contract before us does *181 not constitute a legal or statutory jointure (section 2 of the act relating to dower, S. & C. 518, also see Grogan v. Garrison, 27 Ohio St. 50), and is not, therefore, a bar to dower by virtue of any statutory provision, the question arises whether an election under the statute should not have been made between the provisions in the will and her technical right of dower, although such right of dower was subject to be defeated under the contract as an equitable jointure.
While we are inclined to the opinion • that, under such circumstances, such election was not necessary to protect the widow in her claim under the wTill, we do not find it necessary to decide the point, as we are all satisfied that her •election to take under the will was duly made in accordance with the statute.
The objection made against the validity of the election to take under the will, as recorded in the probate court, of the date of February 6,1873, is that it was not made within the time prescribed by the statute. The time fixed by the -statute is, “ within one year from the date of the service •of the citation ” for her appearance. No citation was ever served upon her, and, therefore, time did not begin to run against her right to elect. It is claimed, however, that the widow is estopped from denying the service of a citation, by the entry found in the record of the probate court of the date of September 30, 1871. The claim is that it must be inferred from this entry, either that the citation was issued and served previous to that date, or that the widow waived the issuing and service thereof.
If the propriety and absolute verity of this entry were conceded, there is nothing in it that raises the slightest suspicion that a citation had been issued and served. And it would certainly be violent .to presume, from the fact that the widow came into open court, and, upon being asked, declined to make an election at that time, that she thereby waived the issuing and service of a citation. Certainly nothing short of an express waiver would suffice, and we think the entry does not tend to prove such waiver.
We are, therefore, unanimous in the opinion that Mrs. *182 Bowen is entitled to the provisions made for her in the will of her late husband.
The next question is: being entitled to take under the will of her husband, can the widow also claim under the-ante-nuptial contract? This question must be determined by ascertaining the intention of the testator ? By her election to take under the will, as recorded in the probate-court, she became legally barred of her technical i-ight to-dower and to a distributive share in the personalty, as, in equity, she was already barred by her ante-nuptial contract. But further than this, such election has no bearing upon the question now under consideration, unless it shall appear that her right to both provisions is contrary to the intention of the testator. It was competent for him to make the provisions for her in the will additional to those secured to her in the contract, or it was competent for him to tender the provisions of the will as satisfaction of, or substitute for, those of the contract, and thus put her to an election between them. If the testator intended that she should have both provisions, there is no case for an election ; if he intended by the will to satisfy the contract, her election to take under the will excludes her from all benefit of the contract, for the plain reason that she can not claim under the will and also in contravention of it.
What, then, was the testator’s intention ? Did he intend that her right under the will should be in addition to her right under the contract, or did he intend that the former should be a substitute for and satisfaction of the latter ?
It is contended on behalf of the residuary legatees, that this case is analogous to one of double portions, and that the law will presume that the testator intended by his will to satisfy the widow’s claim under the contract. It is quite true that where a parent or a person in loco parentis, being bound by a promise to make provision for a child, as upon a marriage settlement, gives a legacy to such child, the law presumes that the legacy was intended as an ademption of the promise, because it would be unnatural and unjust to other children to regard it as a double por *183 tion. This presumed intention, however, may be repelled by other clauses in the will, or by extrinsic circumstances.
But the case at bar is not in perfect analogy with cases of portions from either a natural or assumed parent. The provisions made for the intended wife were not gratuitous on the part of the testator. He paid and agreed to pay an agreed sum for a valuable consideration. That consideration moved from the promisee. It consisted in her engagement to marry him, and to remit all claims against his estate as widow, in the event that she should survive him. The sum so agreed to be paid, upon the consummation of the marriage, became a debt, for the payment of which the estate of the debtor, the testator, is charged.
I am aware that in the case of Wathen v. Smith, 4 Madd. 325, it was held by Sir John Leach that such a claim was not a debt within the meaning of a testator who directed the payment of all his just debts. But afterward, in the case of Cole v. Willard, 25 Beavan, 568, the authority of Wathen v. Smith was impugned by Romily, M. R., who said: “I do not concur with Sir John Leach in his observation in Wathen v. Smith, that the testator must not be understood to include under the word debt his liability on a bond or covenant made on his marriage, although to be discharged after his decease.”
And in a recent case, Pinchin v. Simms, 30 Beavan, 119, where, in a marriage settlement, the use of £5,000 was secured to the wife, and afterward the husband bequeathed the use of £10,000 to her upon the same conditions, the Master of the Rolls said: “The testator not only bequeathed the £10,000 to different trustees from those of the settlement, but he directs them ‘ to pay and discharge all his just debts’ The £5,000 was one of them. I am clearly of opinion, on the form of this will, that the testator intended his widow to enjoy both provisions, and I wall make a declaration to that effect.”
But it is contended on behalf of the residuary legatees, that the law presumes, where a debtor gives a legacy to his creditor, that a satisfaction of the debt is intended. It is *184 true, that the authorities recognize such a rule, but the courts uniformly have held that slight circumstances will take a case out of the rule. Indeed, the presumption against double portions is only prima facie; but while the courts lean toward this presumption, they are exceedingly jealous of the presumption that a legacy is a satisfaction of a debt. To illustrate : While a legacy of less or uncertain value, will be regarded as a satisfaction of a portion pro tanto, or in full, if it turns out to be sufficient, such circumstance, where the legacy is to a creditor will take the case entirely out of the rule.
The distinction here taken is very clearly stated by the Lord Chancellor Cottenham, in Thynne v. Glengall, 2 House of Lords Cases, 158. “ However similar the two cases may at first sight appear to be, the rules of equity, as applicable to each, are absolutely opposed, the one to the other. Equity leans against legacies being taken in satisfaction of a debt, but- leans in favor of a provision in. a will being in satisfaction of a portion by contract, feeling the great improbability of & parent intending a double portion for one child, to the prejudice generally, as in the present case, of other children. In the case of debt, therefore, small circumstances of difference between the debt and the legacy are held to negative the presumption of satisfaction; whereas, in cases of portions, small circumstances are disregarded. So, in the case of debt, a smaller legacy is not held to be a satisfaction of part of the larger debt; but in case of portions, it may be satisfaction pro tanto. • It has been decided that in the case of a debt, a gift of the whole or part of the residue can not be considered as satisfaction, because, it is said, that the amount being uncertain, it may prove to be less than the debt.”
In support of these general views, we may also cite Chancey’s case, 2 Leading Cases in Equity, and cases therein cited, also, Peachey’s Marriage Settlements, and cases there cited.
How, then, stands the case before us ? The claim of Mrs. Bowen, uuder the contract, was a debt of the testator, *185 though uot payable during his life time. By his will, he directed that “all his just debts of every kind be first paid.” We must assume that this claim of his wife was in the testator’s mind when he executed the will, hence, this direction affords a strong, if not conclusive indication, that he intended she should have both payment of her claim under the settlement and the provision made for her in the will. Some cases, it is true, hold that a mere direction to pay debts will not prevent the legacy satisfying the debt. Edmonds v. Law, 3 Kay & J. 318 ; Rowe v. Rowe, 2 De G. & Sm. 297. All the cases, I believe, agree that a direction to pay debts and legacies will suffice to prevent a satisfaction; while others, perhaps more numerous, hold that a direction to pay debts alone will have that effect. Chancey’s ease, 1 P. Williams, 410; Cole v. Willard, 25 Beavan, 568; 30 Beavan, 119. But this case is stronger, for here the direction is, that all my just debts of every kind, be first paid.
It would indeed be hazardous to say that the testator, when he gave this direction, did not intend to include the debt of his wife, which was, by far, the largest outstanding and undisputed debt against him or his estate.
But we need not turn the case on this point alone, as all the authorities agree, that a simple direction to pay debts is an ingredient to be considered with other circumstances in determining the intention of the testator.
The claim of the wife under the settlement was fixed and known to be $18,000, payable in thirty days after the testator’s decease. The provision for her in the will was the use of certain moneys and property during widowhood, subject to be reduced by taxation and repairs. The former was an absolute property, the latter a temporary use, depending, at the farthest, upon the duration of her life, and subject to be defeated by her marriage.
Under the rules above stated this uncertainty in the value of the provisions in the will would, alone, rebut the presumption that they were intended as a satisfaction of the <lebt. But the real purpose of the testator is apparent on the face of the will, and that was to provide for the cur *186 rent expenses of his wife during widowhood. After giving her the use of his mansion and certain other items of property, he gives her the use and benefit of $50,000, all of which was limited to her widowhood, and then provides r “ If this allowance shall prove insufficient to pay taxes- and repairs of the premises and the support of my wifer then I give to her the use of $10,000 more, to be held during her widowhood as aforesaid.” This declared object of the testator’s bounty appears to us to be inconsistent with an intention to discharge an absolute indebtedness. It looks-more like an inducement to celibacy than the payment of a “'just debt.”
And, again, in the third subdivision of the twelfth item of the will the testator says :
- “ I hereby declare it to be my intent and meaning in item 3-of this my will to give to my said wife, Emma Bowen, the income arising from the said sums of fifty thousand dollars and ten thousand dollars, and to give her the use of the house and land therein mentioned during her widowhood, as therein stated.”
This declaration certainly was not intended to deprive his-wife of the use of the furniture, and books, and cari’iages, •.and horses, and chattels used by the testator on the place,, although these things are not here mentioned.
The third item in the will did not leave in the least obscurity the extent of the interest which the wife might take-under its provisions.- Why, then, this carefully penned declaration, unless it was to declare the provisions made for the wife to be a gift, a bounty from his large estate, and not a payment of a debt previously incurred. Except for the ante-nuptial contract, the wife would have been entitled to-forty thousand dollars, and upwards, on distribution of his-personal estate, and dower in about $40,000 worth of real property — an interest vastly in excess of the amount limited to her under the contract. Now, with full knowledge-of these facts, and in contemplation of approaching death, the testator declares the provisions for his wife in the will *187 to be a gift: “ I hereby declare it to be my true intent aud meaning in item 8 of this my will to give to my said wife,” etc.
The correctness of this construction of the clause under consideration becomes more apparent, when taken in connection with other clauses, which show that the provisions for the widow, under the will, have no correspondence, either in character or amount, to her claim under the contract, hut were intended to meet her current expenses during widowhood; and especially with that clause in which the testator directs that all his “just debts of every kind be first paidthat is, before any bequest should become a charge on his estate; so that, upon the face of the will itself, it indubitably appears that the testator intended his widow to have the benefit of her contract as well as the provisions of his will.
Some other questions on the agreed statement of facts, have been raised by counsel for the residuary legatees, but we find nothing in them to change the result above indicated.
A decree -will, therefore, be entered (all the judges concurring) in favor of defendant, Emma M. Bowen, on hex-claims under the provisions of the will, and also on hex-claim under the ante-nuptial contract.

Judgment accordingly.